## RICHARDS v. FULTON, Superintendent of Banks.

No. 6592.

Circuit Court of Appeals, Sixth Circuit.

March 11, 1935.

Geo. D. Welles, of Toledo, Ohio (Edward L. Williams, Paxton Blair and Allen E. Throop, all of New York City, Sidney D. L. Jackson, Jr., of Toledo, Ohio, Cotton, Franklin, Wright & Gordon, of New York City, and Tracy, Chapman & Welles, of Toledo, Ohio, on the brief), for appellant.

S. M. Douglas, of Toledo, Ohio (John W. Bricker, of Columbus, Ohio, and Brown & Sanger, of Toledo, Ohio, on the brief), for appellee.

Before MOORMAN, SIMONS and ALLEN, Circuit Judges.

MOORMAN, Circuit Judge.

The Willys Corporation was organized under the laws of Delaware. In 1921 it was placed in the hands of federal court receiv-

854

ers both in Delaware and Ohio. The Ohio receivers opened a deposit account in the commercial department of the Ohio Savings Bank & Trust Company. In April of 1926 they caused the account to be transferred to the trust department of the bank, where it was entered on the trust ledger as "Willys Corporation Deposit" and credited to an account designated "Uninvested Trust Funds." All cash items coming to the trust department were set up in this account. The funds of the account were at all times commingled with the general assets of the bank. The Willys Corporation deposit was likewise commingled with the general funds and assets of the bank. From April 15, 1926, to April 23, 1929, the receivers from time to time drew checks against the deposit, which were paid by the bank. On April 23, 1929, Caffey, the only remaining Ohio receiver, resigned, and the court entered an order directing that no new receiver be appointed in his place, but that the fund remain on deposit with the bank and be disbursed by it upon order of the court. The order provided that upon the furnishing of a certified copy thereof to the bank, it would be authorized to hold the deposit "from and after this date as a special trust deposit of Willys Corporation, subject to the order of this court, instead of an account in the name of Francis G. Caffey, as Receiver." A certified copy of the order was served on the bank. Thereafter, the bank continued to credit the account with interest on daily balances. Before tax listing days in April, 1930 and 1931, it purchased government bonds for the account and earmarked them as belonging thereto, but immediately after the tax listing days sold the bonds for the same amount as the purchase price, crediting the sale price to the account. In July of 1931, on order of the court, it paid attorney fees amounting to $10,000 from the account. At all of these times the bank had in its vaults currency and specie exceeding the amount of the deposit. The bank closed on August 17, 1931. Thereafter, the Delaware receiver petitioned the court to order the bank to turn over to him the entire amount of the deposit, plus interest. The court refused to issue the order, and this appeal followed.

The deposit was admittedly a general deposit prior to April 23, 1929, the bank being debtor to the receivers in an amount equal thereto. The appellant contends that by the court order of that date it was converted into a special deposit. Such a de-

posit, as has been frequently held, "consists in the placing of specific kinds of money or property in the possession of the bank, with an obligation of the bank to return the identical thing deposited; the depositor retaining title." Keyes v. Paducah & I. R. Co., 61 F.(2d) 611, 612, 86 A. L. R. 203 (6 C. C. A.). It contemplates a preservation of identity by segregation from other like kinds of money or property, and the bank becomes a bailee and not a debtor, as where the deposit is general and the bank takes title and becomes obligated not to return the specific money deposited, but to pay the depositor an equal sum on demand. The order of April 23d stated that the fund should remain on deposit with the bank, and authorized the bank to hold it from and after that date as a "special trust deposit of Willys Corporation, subject to the order of this court, instead of an account in the name of Francis G. Caffey, as Receiver." There is no showing that at that time any identifiable money was held by the bank for the Willys Corporation. The money had long been commingled with the other funds of the bank and perhaps loaned to the bank's patrons or spent. The title to it was not in the receivers but had been parted with, and all that the receivers owned or had was a claim against the bank for an amount equal to it. That it was the intention of the receivers and the bank that it should be a general deposit, with the bank having the right to use it and pay back an equal sum, is evidenced by the crediting of interest to the account by the bank computed on the average daily balances. These credits were reported by receiver Caffey to and approved by the court on April 8, 1929. After April 23d the bank continued to credit interest to the account, indicating that it was the intention of the bank that the deposit should retain its status of an interest-bearing general deposit. Nothing appears in the record to show a different intention on the part of the appellant receiver; indeed, as late as November 6, 1931, he insisted that the bank be required to pay over to him the principal sum of the deposit, with the interest credited thereon. The crediting of interest on the deposit indicates a general deposit, and "in the absence of a definite understanding to the contrary" is controlling. Restatement, Trusts (Tent. Draft No. 1) pp. 41, 42; Columbia Law Review, June, 1921, vol. 21, p. 507.

It is also clear, we think, that no trust was created by the order of April 23d. The case is not as it would be had the money

been withdrawn from the bank and redeposited under a trust agreement. In such case there would be a res which, though commingled with other funds, would be recoverable if traced; but here there is no fund to be traced, for, as we have said, all that the court dealt with by its order was a debt due the receivers with which they were credited on the books of the bank. There was no segregation of the deposit by the court order and therefore no identifiable res to which a trust could attach. Blakey v. Brinson, 286 U. S. 254, 263, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288; Edisto National Bank v. Bryant (C. C. A.) 72 F.(2d) 917, 919. Even if the court intended to impose upon the bank the duties of a trustee, its order was ineffectual because there was no augmentation of the bank's assets and no trust corpus. The only effect of the order was to convert a debt due the receivers to a debt subject to the direct control of the court. This conversion created nothing identifiable which could be impressed with a trust.

The order of the court is affirmed.